UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JESSE PIERCE,

   Plaintiff,         Hon. Janet T. Neff

v.               Case No. 1:19-cv-432

COMMISSIONER OF SOCIAL
SECURITY,

   Defendant.
_____/

## REPORT AND RECOMMENDATION

   This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Supplemental Security Income (SSI) under Title XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that the Commissioner's decision be vacated and this matter remanded for further administrative action pursuant to sentence four of 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

   The Court's jurisdiction is limited to a review of the Commissioner's decision and of the record made in the administrative hearing process. *Tucker v. Commissioner of Social Security*, 775 Fed. Appx. 220, 225 (6th Cir., June 10, 2019).

The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *Id.* at 224-25. Substantial evidence is more than a scintilla, but less than a preponderance, and constitutes such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Livingston v. Commissioner of Social Security*, 776 Fed. Appx. 897, 898 (6th Cir., June 19, 2019).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *Biestek v. Commissioner of Social Security*, 880 F.3d 778, 783 (6th Cir. 2017). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *Moruzzi v. Commissioner of Social Security*, 759 Fed. Appx. 396, 402 (6th Cir., Dec. 21, 2018). This standard affords to the administrative decision maker considerable latitude and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *Luukkonen v. Commissioner of Social Security*, 653 Fed. Appx. 393, 398 (6th Cir., June 22, 2016).

## BACKGROUND

Plaintiff was 47 years of age on the date he filed his application. (ECF No. 6-5, PageID.243). He successfully completed high school and worked previously as an industrial truck driver and a heavy truck driver. (ECF No. 6-2, PageID.49-50).

Plaintiff applied for benefits on June 10, 2016, alleging that he was disabled due to seizures, migraines, bi-polar disorder, depression, anxiety, hypertension, nerve damage in his feet, knee paralysis, panic attacks, memory loss, and nervous disorder. (ECF No. 6-5, 6-6, PageID.243-48, 262).

Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (ECF No. 6-3, 6-4, PageID.91-241) Following an administrative hearing, ALJ David Kurtz, in an opinion dated May 24, 2018, determined that Plaintiff did not qualify for disability benefits. (ECF No. 6-2, PageID.39-51, 60-89). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (*Id.*, PageID.30-34). Plaintiff subsequently initiated this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

On March 25, 2020, the undersigned recommended that this matter be remanded to the Commissioner on the basis that the ALJ violated *res judicata* principles under *Early v. Commissioner*, 893 F.3d 929, 931 (6th Cir. 2018). (ECF No. 13). The Honorable Janet T. Neff rejected this recommendation and remanded the matter to the undersigned for a second Report and Recommendation addressing merits of the issues raised in this matter. (ECF No. 16). Having conducted that review, and as discussed below, the undersigned again recommends that this matter be remanded to the Commissioner.

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f). If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a non-exertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

Plaintiff bears the burden to demonstrate he is entitled to disability benefits, and he satisfies his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A). While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *O'Neal v. Commissioner of Social Security*, 799 Fed. Appx. 313, 315 (6th Cir., Jan. 7, 2020).

The ALJ determined that Plaintiff suffers from: (1) obesity; (2) major motor seizures; (3) status post-surgical left knee; (4) osteoarthritis of the left knee; (5) disorders of the muscle, ligament, and fascia; (6) other disorders of the GI system; (7) essential hypertension; (8) hypothyroidism; (9) migraines; (10) affective disorder;

and (11) anxiety, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (ECF No. 6-2, PageID.41-43). With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the ability to perform a limited range of light work. (*Id.*, PageID.43).

The ALJ found that Plaintiff was unable to perform his past relevant work at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that there exists in the national economy a significant number of specific jobs which Plaintiff can perform, his limitations notwithstanding. *O'Neal*, 2020 WL 97414 at *2. In satisfying this burden, the ALJ may rely on a vocational expert's testimony. *Ibid*.

In this case, a vocational expert testified that there existed approximately 275,000 jobs in the national economy which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (ECF No. 6-2, PageID.85-87). This represents a significant number of jobs. *See, e.g., Taskila v. Commissioner of Social Security*, 819 F.3d 902, 905 (6th Cir. 2016) ("[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'"). Accordingly, the ALJ concluded that Plaintiff was not entitled to benefits.

I. **Treating Physician Doctrine**

In April 2018, one of Plaintiff's treating physicians opined that Plaintiff was more limited, physically, than the ALJ recognized. (ECF No. 6-9, PageID.765-66). Specifically, the doctor reported that during an 8-hour workday, Plaintiff could stand/walk for "less than" 2 hours. (*Id.*, PageID.765). The ALJ afforded "little weight" to the doctor's opinion. (ECF No. 6-2, PageID.49). Plaintiff argues that the ALJ's rationale for discounting his treating physician's opinions is not supported by substantial evidence. The Court agrees.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375-76 (6th Cir. 2013).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Id.* at 376. Such reasons must be "supported by the evidence in the case record, and they must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Ibid.*

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Secretary of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citation omitted). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

To put the ALJ's error in context, it is necessary to first explore one aspect of Plaintiff's lower extremity impairments. Plaintiff has been diagnosed with equinus deformities in both of his feet. (ECF No. 6-7, PageID.446, 465). The American College of Foot and Ankle Surgeons defines an equinus deformity as follows:

> Equinus is a condition in which the upward bending motion of the ankle joint is limited. Someone with equinus lacks the flexibility to bring the top of the foot toward the front of the leg. Equinus can occur in one or both feet. When it involves both feet, the limitation of motion is sometimes worse in one foot than in the other.
>
> People with equinus develop ways to "compensate" for their limited ankle motion, and this often leads to other foot, leg, or back problems. The most common methods of compensation are flattening of the arch or picking up the heel early when walking, placing increased pressure on the ball of the foot. Other patients compensate by "toe-walking," while a smaller number take steps by bending abnormally at the hip or knee.

Equinus, available at https://www.acfas.org/footankleinfo/Equinus.htm (last visited October 9, 2020).

In an attempt to treat this condition, Plaintiff underwent gastrocnemius recession operations on both lower extremities. (ECF No 6-7, 6-8, PageID.470, 611-12). Gastrocnemius recession "is an operation designed to release the gastrocnemius muscle as a means of restoring it to a more normal anatomical length that promotes healthier gait, stance, and function of the foot and ankle." Gastrocnemius Slide, available at https://footeducation.com/gastrocnemius-slide/ (last visited on October 9, 2020). Plaintiff later underwent an open plantar fasciotomy of his left foot in an attempt to relieve "chronic intractable plantar fasciitis" and "chronic heel pain." (ECF No. 6-8, PageID.603-04). Despite these aggressive treatment measures, Plaintiff continued to experience pain, burning, numbness, and decreased range of motion in his feet. (ECF No. 6-7, 6-8, 6-9, 6-10, PageID.446, 454, 464, 470, 526, 681, 683, 728, 774, 782, 784, 797, 799, 805). Plaintiff also exhibited "moderate and severe difficulty performing orthopedic maneuvers" during examination. (ECF No. 6-8, PageID.526).

Given this circumstance, Physician's Assistant Dana Martin and Dr. John Robertson concluded that during an eight-hour workday, Plaintiff could stand/walk for "less than" two hours. (ECF No. 6-9, PageID.765). Martin explained that this particular limitation was necessary because Plaintiff suffers from "tight" tendons which make it difficult for him to "set his feet on the floor." (*Id.*, PageID.768). Martin continued that because of this limitation, Plaintiff "has got to walk basically on his tiptoes." (*Id.*). Dr. Robertson stated that he agreed with this assessment. (*Id.*, PageID.769).

The ALJ articulated three reasons for discounting the opinion in question, none of which survive scrutiny. First, the ALJ stated in conclusory fashion that the opinion "is not consistent with the evidence of record." (ECF No. 6-2, PageID.49). The ALJ fails to identify the "evidence of record" to which he is referring, and such is not obvious to the Court.

Second, the ALJ stated "there is no indication [Plaintiff] requires future surgery and his prior knee surgery was successful." (ECF No. 6-2, PageID.49). That Plaintiff's knee surgery may have been successful is not particularly relevant to an assessment of an opinion regarding Plaintiff's foot impairments and the limitations imposed by such. Likewise, that Plaintiff may not undergo foot surgery in the future may be probative if Plaintiff had received only conservative treatment for his foot impairments. But, given that Plaintiff has already undergone three surgeries on his feet, that no further surgeries appear on the horizon is far less probative or supportive of the ALJ's analysis.

Finally, the ALJ stated that Plaintiff "indicated on multiple occasions he had no acute medical problems." (ECF No. 6-2, PageID.49). This is a misguided assessment of the overall medical record, which details the many impairments from which Plaintiff suffers and the pain and limitation they undoubtedly have caused. Moreover, the single citation to which the ALJ cited in support of this proposition in no way supports the ALJ's statement. (ECF No. 6-2, 6-9, PageID.49, 738).

Vague conclusions as to why a treating source's opinion was discounted are insufficient. *See, e.g., Friend v. Commissioner of Social Security*, 375 Fed. Appx. 543, 552 (6th Cir., Apr. 28, 2010) ("it is not enough to dismiss a treating physician's opinion as 'incompatible' with other evidence of record; there must be some effort to identify the specific discrepancies and to explain why it is the treating physician's conclusion that gets the short end of the stick"). Accordingly, the Court finds that the ALJ has failed to articulate good reasons, supported by substantial evidence, to support his decision to discount Dr. Robertson's opinion. Given that the doctor's opinion is inconsistent with the ALJ's RFC determination and the ALJ's subsequent conclusion that there exist a significant number of jobs which Plaintiff can perform despite his limitations, the ALJ's failure is not harmless.

## II.   Plaintiff's RFC

A claimant's RFC represents the "most [a claimant] can still do despite [his] limitations." *Sullivan v. Commissioner of Social Security*, 595 Fed. Appx. 502, 505 (6th Cir., Dec. 12, 2014); *see also*, Social Security Ruling 96-8P, 1996 WL 374184 at *1 (Social Security Administration, July 2, 1996) (a claimant's RFC represents his ability to perform "work-related physical and mental activities in a work setting on a regular and continuing basis," defined as "8 hours a day, for 5 days a week, or an equivalent work schedule"). Plaintiff argues that he is entitled to relief because the ALJ failed to properly assess his RFC. The Court agrees.

The ALJ concluded that Plaintiff can perform a range of light work. Work is considered "light" when it involves "a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567, 416.967. As the Commissioner recognizes, however, "relatively few unskilled light jobs are performed in a seated position." Titles II and XVI: Determining Capability to do Other Work – the Medical-Vocational Rules of Appendix 2, SSR 83-10, 1983 WL 31251 at *6 (S.S.A., 1983).

The ALJ concluded that Medical Vocation Rule 202.21 would apply if Plaintiff could perform the full range of light work. (ECF No. 6-2, PageID.50). This particular grid rule assumes that a claimant possesses no work skills which are transferable to skilled or semiskilled work. 20 C.F.R., Part 404, Subpart P, Appendix 2, § 202.21. Thus, the ALJ has implicitly limited Plaintiff to the performance of unskilled work, which, at the light exertional level, is rarely performed in a seated position. There is no indication that the jobs identified by the vocational expert are performed in a seated position. The ALJ, therefore, determined that Plaintiff can perform work that requires a good deal of standing or walking, which is generally defined as "approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251 at *6.

As the evidence discussed above reveals, substantial evidence does not support the conclusion that Plaintiff can stand or walk "a good deal," let alone six hours, of an eight-hour workday. Accordingly, the undersigned finds that the ALJ's RFC assessment is not supported by substantial evidence. Because the vocational

expert's testimony was premised upon a faulty RFC determination, the ALJ's reliance thereon does not constitute substantial evidence. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996) (while the ALJ may rely upon responses to hypothetical questions posed to a vocational expert, such questions must accurately portray the claimant's impairments).

### III. Remand is Appropriate

While the Court finds that the ALJ's decision fails to comply with the relevant legal standards, Plaintiff can be awarded benefits only if "all essential factual issues have been resolved" and "the record adequately establishes [her] entitlement to benefits." *Faucher v. Secretary of Health and Human Serv's*, 17 F.3d 171, 176 (6th Cir. 1994); *see also*, *Brooks v. Commissioner of Social Security*, 531 Fed. Appx. 636, 644 (6th Cir., Aug. 6, 2013). This latter requirement is satisfied "where the proof of disability is overwhelming or where proof of disability is strong and evidence to the contrary is lacking." *Faucher*, 17 F.3d at 176; *see also*, *Brooks*, 531 Fed. Appx. at 644. Evaluation of Plaintiff's claim requires the resolution of factual disputes which this Court is neither competent nor authorized to undertake in the first instance. Moreover, there does not exist compelling evidence that Plaintiff is disabled. Accordingly, this matter must be remanded for further administrative action.

## CONCLUSION

For the reasons stated herein, the undersigned recommends that the Commissioner's decision be vacated and this matter remanded for further administrative action pursuant to sentence four of 42 U.S.C. § 405(g).

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: October 13, 2020     /s/ Phillip J. Green
                           PHILLIP J. GREEN
                           United States Magistrate Judge